UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ———————————————————— x | | |
| In re CAMELOT INFORMATION SYSTEMS | : | Civil Action No. 1:12-cv-00086-PGG |
| INC. SECURITIES LITIGATION | : | |
| ———————————————————— | : | CLASS ACTION |
| | : | |
| This Document Relates To: | : | CO-LEAD COUNSEL'S MEMORANDUM |
| | : | OF LAW IN SUPPORT OF MOTION FOR |
| ALL ACTIONS. | : | AN AWARD OF ATTORNEYS' FEES AND |
| ———————————————————— x | : | EXPENSES |

1017618_2

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...............................................................................................1

II.  PRELIMINARY STATEMENT ........................................................................1

III.  HISTORY AND BACKGROUND OF THE LITIGATION..............................4

IV.  ARGUMENT......................................................................................................4

    A.  Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund...........................................................4

    B.  The Court Should Award a Reasonable Percentage of the Common Fund.............5

    C.  The Relevant Factors Confirm that the Requested Fee Is Reasonable ...................8

        1.  The Time and Labor Expended by Counsel ................................................8

        2.  The Risks of the Litigation ........................................................................9

            a.  The Contingent Nature of Plaintiffs' Counsel's Representation Supports the Requested Fee ....................................9

            b.  Litigation Risks...........................................................................11

            c.  Risk as to Damages......................................................................12

            d.  Risk to Enforcing a Judgment......................................................12

        3.  The Magnitude and Complexity of the Litigation ....................................13

        4.  The Quality of Representation ..................................................................14

        5.  Public Policy Considerations ....................................................................14

        6.  The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method .........................16

        7.  The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check..............................................................................17

        8.  The Class' Reaction to the Fee Request ....................................................19

V.  PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION .......................20

VI.  CONCLUSION..................................................................................................21

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ................................................................................................11

*Aponte v. Comprehensive Health Mgmt., Inc.*,
   No. 10 Civ. 4825 (JLC), 2013 U.S. Dist. LEXIS 47637
   (S.D.N.Y. Apr. 2, 2013)......................................................................................................6, 9

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...............................................................................................................14

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
   472 U.S. 299 (1985)............................................................................................................5, 14

*Blum v. Stenson*,
   465 U.S. 886 (1984)................................................................................................................16

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..................................................................................................................4

*Brown v. Phillips Petroleum Co.*,
   838 F.2d 451 (10th Cir. 1988) .................................................................................................6

*Camden I Condo. Ass'n v. Dunkle*,
   946 F.2d 768 (11th Cir. 1991) .................................................................................................6

*Chatelain v. Prudential-Bache Sec.*,
   805 F. Supp. 209 (S.D.N.Y. 1992) ...................................................................................13, 15

*City of Providence v. Aéropostale, Inc.*,
   No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517
   (S.D.N.Y. May 9, 2014)..........................................................................................................18

*Clark v. Ecolab Inc.*,
   No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036
   (S.D.N.Y. May 11, 2010)........................................................................................................17

*Collins v. Olin Corp.*,
   No. 3:03-cv-945(CFD), 2010 U.S. Dist. LEXIS 39862
   (D. Conn. Apr. 21, 2010) ........................................................................................................17

*Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)................................................................................................9, 19

Page

*Elliot v. Leatherstocking Corp.*,
No. 3:10-CV-0934, 2012 U.S. Dist. LEXIS 171443
(N.D.N.Y. Dec. 4, 2012)................................................................................................................7

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000)...................................................................................................*passim*

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) .......................................................................................................6

*Hicks v. Morgan Stanley & Co.*,
No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890
(S.D.N.Y. Oct. 24, 2005) ..............................................................................................................7

*Hubbard v. BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ...................................................................................................11

*In re Am. Bank Note Holographics*,
127 F. Supp. 2d 418 (S.D.N.Y. 2001).............................................................................6, 7, 10

*In re Amaranth Natural Gas Commodities Litig.*,
No. 07 Civ. 6377(SAS), 2012 U.S. Dist. LEXIS 82599
(S.D.N.Y. June 11, 2012)............................................................................................................16

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
No. MDL 1500, 2006 U.S. Dist. LEXIS 17588
(S.D.N.Y. Apr. 6, 2006)...............................................................................................................13

*In re Bayer AG Sec. Litig.*,
No. 03 Civ. 1546 (WHP), 2008 U.S. Dist. LEXIS 101350
(S.D.N.Y. Dec. 15, 2008).............................................................................................................13

*In re Brown Co. Sec. Litig.*,
355 F. Supp. 574 (S.D.N.Y. 1973) ............................................................................................14

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) .....................................................................................................10

*In re Flag Telecom Holdings*,
No. 02-CV-3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702
(S.D.N.Y. Nov. 8, 2010) ..............................................................................................................14

- iii -

Page

*In re Gilat Satellite Networks, Ltd.*,
  No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964
  (E.D.N.Y. Sept. 18, 2007)..............................................................................................................7

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .............................................................................................6, 20

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1995)............................................................................................................6

*In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
  142 F.R.D. 588 (S.D.N.Y. 1992) ..................................................................................................7

*In re Ikon Office Solutions, Inc., Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).............................................................................................13, 19

*In re IMAX Sec. Litig.*,
  No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 108516
  (S.D.N.Y. Aug. 1, 2012) ...............................................................................................................6

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003).........................................................................................20

*In re Interpublic Sec. Litig.*,
  No. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429
  (S.D.N.Y. Oct. 27, 2004) ..............................................................................................................5

*In re Ivan F. Boesky Sec. Litig.*,
  888 F. Supp. 551 (S.D.N.Y. 1995) .............................................................................................18

*In re JAKKS Pac., Inc. S'holders Class Action Litig.*,
  No. 04-CV-8807 (RJS), slip op. (S.D.N.Y. Oct. 28, 2010) ........................................................16

*In re JDS Uniphase Corp. Sec. Litig.*,
  No. C-02-1486 CW (EDL), 2007 WL 4788556
  (N.D. Cal. Nov. 27, 2007)............................................................................................................11

*In re L.G. Philips LCD Co., Ltd. Sec. Litig.*,
  No. 1:07-cv-00909-RJS, slip op. (S.D.N.Y. Mar. 17, 2011) .......................................................16

*In re LaBranche Sec. Litig.*,
  No. 03-CV-8201(RWS), slip op. (S.D.N.Y. Jan. 22, 2009) ........................................................17

1017618_2

Page

*In re Med. X-Ray Film Antitrust Litig.*,
  No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888
  (E.D.N.Y. Aug. 7, 1998) .......................................................................................15

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450
  (S.D.N.Y. Feb. 1, 2007) ........................................................................................19

*In re Prudential Sec. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997) .......................................................................10

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)..................................................................................20

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999).......................................................................7

*In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*,
  56 F.3d 295 (1st Cir. 1995) .....................................................................................6

*In re Van Der Moolen Holding N.V. Sec. Litig.*,
  No. 1:03-CV-8284 (RWS), slip op. (S.D.N.Y. Dec. 6, 2006) ................................17

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554
  (S.D.N.Y. Nov. 7, 2007) ...........................................................................4, 5, 6, 7

*In re Visa Check/Mastermoney Antitrust Litig.*,
  297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom.*
  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005) .....................7

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985),
  *aff'd*, 798 F.2d 35 (2d Cir. 1986) .....................................................................15, 18

*In re WorldCom, Inc. Sec. Litig.*,
  388 F. Supp. 2d 319 (S.D.N.Y. 2005).....................................................................15

*J.I. Case Co. v. Borak*,
  377 U.S. 426 (1964)..................................................................................................5

*Johnston v. Comerica Mortg. Corp.*,
  83 F.3d 241 (8th Cir. 1996) ......................................................................................6

- v -

Page

*Khait v. Whirlpool Corp.*,
   No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067
   (E.D.N.Y. Jan. 20, 2010) ...........................................................................................17

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................... *passim*

*Mathes v. Roberts*,
   85 F.R.D. 710 (S.D.N.Y. 1980) ..................................................................................13

*McMahon v. Olivier Cheng Catering & Events, LLC*,
   No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913
   (S.D.N.Y. Mar. 3, 2010) .............................................................................................17

*Menkes v. Stolt-Nielsen S.A.*,
   No. 3:03CV00409 (DJS), 2011 U.S. Dist. LEXIS 7066
   (D. Conn. Jan. 25, 2011)............................................................................................16

*Missouri v. Jenkins*,
   491 U.S. 274 (1989)............................................................................................16, 19

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .......................................................................................6

*Rawlings v. Prudential-Bache Props.*,
   9 F.3d 513 (6th Cir. 1993) ............................................................................................6

*Ressler v. Jacobson*,
   149 F.R.D. 651 (M.D. Fla. 1992).................................................................................15

*Reyes v. Buddha-Bar NYC*,
   No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277
   (S.D.N.Y. May 28, 2009).............................................................................................17

*Robbins v. Koger Props.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................................11

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999).....................................................................................4, 6

*Schnall v. Annuity & Life Re (Holdings), Ltd.*,
   No. 02 CV 2133 (EBB), slip op. (D. Conn. Jan. 21, 2005) ......................................16

Page

*Silverberg v. People's Bank,*
23 F. App'x 46 (2d Cir. 2001) ..............................................................................................16

*Six (6) Mexican Workers v. Ariz. Citrus Growers,*
904 F.2d 1301 (9th Cir. 1990) ................................................................................................6

*Spann v. AOL Time Warner, Inc.,*
No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848
(S.D.N.Y. June 7, 2005).........................................................................................................17

*Stefaniak v. HSBC Bank USA, N.A.,*
No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872
(W.D.N.Y. July 8, 2008).....................................................................................................7, 17

*Swedish Hosp. Corp. v. Shalala,*
1 F.3d 1261 (D.C. Cir. 1993)..................................................................................................6

*Taft v. Ackermans,*
No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144
(S.D.N.Y. Jan. 31, 2007).......................................................................................................17

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
No. 01-CV-11814 (MP), 2004 U.S. Dist. LEXIS 8608
(S.D.N.Y. May 14, 2004)..........................................................................................................9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
551 U.S. 308 (2007)..........................................................................................................5, 14

*Westerfield v. Wash. Mut. Bank,*
No. 06-CV-2817(JMA), 2009 U.S. Dist. LEXIS 94544
(E.D.N.Y. Oct. 8, 2009)..........................................................................................................16

*Zerkle v. Cleveland-Cliffs Iron Co.,*
52 F.R.D. 151 (S.D.N.Y. 1971) .............................................................................................13

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§77z-1(a)(6) ........................................................................................................................3, 6

1017618_2

**Page**

## SECONDARY AUTHORITIES

7B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
  *Federal Practice and Procedure* (3d ed. 2005)
  §1803.................................................................................................................4

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2013
  Review and Analysis*
  (Cornerstone Research 2014).................................................................................3

Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*,
  108 F.R.D. 237 (Oct. 8, 1985) ...............................................................................6

## I.    INTRODUCTION

Co-Lead Counsel Kessler Topaz Meltzer & Check, LLP and Robbins Geller Rudman & Dowd LLP have obtained a settlement fund of $2,750,000 for the benefit of the Class – a very good result, achieved in spite of serious obstacles to recovery in the Litigation.[1]  Co-Lead Counsel, on behalf of Plaintiffs' Counsel, now respectfully move this Court for an award of attorneys' fees in the amount of 30% of the Settlement Fund.  Co-Lead Counsel also respectfully request $99,238.79 in expenses that were reasonably and necessarily incurred in prosecuting and resolving the Litigation against Defendants and obtaining this Settlement for the benefit of the Class.[2]

## II.    PRELIMINARY STATEMENT

The $2.75 million Settlement obtained by Co-Lead Counsel is a notable result for the Class and represents the culmination of arm's-length negotiations in a case that presented complex factual and legal issues.  This was not a typical securities class action involving an obvious fraud in a common industry.  Camelot was a British Virgin Islands holding company that, through its operating subsidiaries, provided information technology ("IT") services to businesses and financial institutions in mainland China, Taiwan, Hong Kong, and Japan through a network of 27 regional and local subsidiaries.  Joint Decl., ¶8.

---

[1]    Capitalized terms used herein are defined and have the meanings contained in the Settlement Agreement, the accompanying Joint Declaration of Johnston de F. Whitman, Jr. and David A. Rosenfeld in Support of Plaintiffs' Motion for Final Approval of the Proposed Settlement and Plan of Allocation and Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses (the "Joint Decl.") and in Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of the Proposed Settlement and Plan of Allocation, Approval of the Notice Program, and Final Certification of the Class for Settlement Purposes ("Settlement Memorandum"), filed concurrently herewith.

[2]    The Notice mailed to potential Members of the Class stated that Co-Lead Counsel would apply to the Court for attorneys' fees not to exceed 30% of the Settlement Fund and expenses not to exceed $140,000, plus interest thereon, to be paid from the Settlement Fund.

Co-Lead Counsel performed an extensive investigation into Camelot's business in connection with framing and analyzing Plaintiffs' claims.   To that end, Co-Lead Counsel interviewed former employees of Camelot and certain of its subsidiaries.   Joint Decl., ¶16.   In connection with the foregoing efforts, Co-Lead Counsel retained Phillip Layton of KBC, Ltd., an experienced Hong Kong-based investigator and former member of the Hong Kong Police's Commercial Crime Bureau, where he was responsible for task force investigations of bank fraud.   *Id.* It was only through the diligent efforts of Plaintiffs and Plaintiffs' Counsel that the Members of the Class will be receiving compensation for Defendants' wrongdoing alleged in the Amended Complaint.

Even though Plaintiffs believed in the strength of their claims, they faced substantial risks to continued litigation.   Plaintiffs may not have prevailed in response to Defendants' Motions to Dismiss, they might not have obtained class certification, and there were additional risks that the case could be summarily disposed of after years of litigation upon Defendants' motions for summary judgment following the close of fact discovery, or at trial.   Plaintiffs also faced difficult legal challenges in proving falsity and materiality with respect to Defendants' statements and proving scienter for Plaintiffs' claims under Section 10(b) of the Exchange Act would be difficult because it relates to state of mind.[3]   Importantly, the success of any of the asserted defenses would affect the amount of damages the Class could potentially recover.   If any or all of Defendants' positions prevailed, liability would not have been established and/or damages could have been significantly less than Co-Lead Counsel's consultant had calculated.   Furthermore, Camelot was experiencing

---

[3]   Further complicating this Litigation is the fact that many relevant witnesses and documents are located in China, and China does not permit attorneys to take depositions in China for use in foreign courts.   If Plaintiffs could obtain documents, they would have to be translated, creating possible interpretation issues between the parties.

financial and business difficulties at the time the Settlement was reached, so even if they had succeeded at summary judgment or trial, Plaintiffs would have faced the risk that Camelot would not be able to pay an amount even equal to the present Settlement at a later date or satisfy a judgment after trial.[4]   The $2.75 million Settlement represents a recovery of approximately 5.5% of the maximum recoverable damages estimated by Plaintiffs' damages consultant, which is well above the average recovery when compared to actual investor losses.  *See* Joint Decl., ¶42; Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, *Securities Class Action Settlements: 2013 Review and Analysis*, at 2 (Cornerstone Research 2014).  Thus, Co-Lead Counsel's efforts have resulted in a very good recovery for the Class.

For their efforts and the risks and contingencies they faced, Co-Lead Counsel respectfully request that the Court award attorneys' fees in the amount of 30% of the Settlement Fund, plus expenses in the amount of $99,238.79, plus interest on both amounts at the same rate that is earned by the Settlement Fund.[5]   Following an extensive Court-ordered notice program, not a single Class Member has objected to the maximum amount of fees and expenses set forth in the Notice, and Co-Lead Counsel respectfully submit that the requested amounts are fair and reasonable under the circumstances.[6]

---

[4]     Even if Camelot ***could*** satisfy a judgment, there is no guarantee that a court outside of the United States would enforce a judgment against the Company.  Joint Decl., ¶40.

[5]     Under the PSLRA, fees and expenses awarded to counsel for the Class include "prejudgment interest actually paid to the class."  15 U.S.C. §77z-1(a)(6).

[6]     As of the filing of this fee memorandum, which is before the April 21, 2015 deadline for filing objections, Co-Lead Counsel have not received any objections to the fee request.  Pursuant to the Court's Preliminary Approval Order, copies of the Notice were mailed to more than 25,500 potential Members of the Class and nominees, advising them that Co-Lead Counsel intended to apply to the Court for an award of attorneys' fees not to exceed 30% of the Settlement Fund, plus expenses of no greater than $140,000, plus interest on both amounts.  If any timely objections are

III.    HISTORY AND BACKGROUND OF THE LITIGATION

The Court is respectfully referred to the accompanying Joint Declaration for a full discussion

of, *inter alia*, the factual background and procedural history of the Litigation, the litigation efforts of

Plaintiffs' Counsel, the significant risks of continued litigation, and a discussion of the negotiations

leading to this Settlement.

IV.    ARGUMENT

A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees and Expenses from the Common Fund

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common

fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also*

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir. 2000); *Savoie v. Merchants Bank*, 166

F.3d 456, 459-60 (2d Cir. 1999). "The court's authority to reimburse the representative parties . . .

stems from the fact that the class-action device is a creature of equity and the allowance of attorney-

related costs is considered part of the historic equity power of the federal courts." 7B Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* §1803, at 325 (3d ed.

2005). The purpose of the common fund doctrine is to fairly and adequately compensate class

counsel for services rendered and to ensure that all class members contribute equally towards the

costs associated with litigation pursued on their behalf. *See also Goldberger*, 209 F.3d at 47; *In re*

*Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695 (CM), 2007 U.S. Dist. LEXIS 85554, at *7-

*8 (S.D.N.Y. Nov. 7, 2007).

---

received from Class Members, Co-Lead Counsel will address them in a reply brief, which will be filed with the Court no later than May 5, 2015.

Courts have recognized that, in addition to providing just compensation, awards of fair attorneys' fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future alleged misconduct of a similar nature. *See, e.g.*, *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002). Indeed, the Supreme Court has emphasized that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (quoting *J.I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964)); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Courts in this Circuit have consistently adhered to these teachings. *See In re Interpublic Sec. Litig.*, No. 6527 (DLC), 2004 U.S. Dist. LEXIS 21429, at *30-*31 (S.D.N.Y. Oct. 27, 2004) ("It is well established that where an attorney creates a common fund from which members of a class are compensated for a common injury, the attorneys who created the fund are entitled to 'a reasonable fee – set by the court – to be taken from the fund.'") (citation omitted). The "[d]etermination of 'reasonableness' is within the discretion of the district court." *Id.* at *31.

## B. The Court Should Award a Reasonable Percentage of the Common Fund

The Second Circuit has authorized district courts to employ the percentage-of-the-fund method when awarding fees in common fund cases. *See Goldberger*, 209 F.3d at 47 (holding that the percentage-of-the-fund method may be used to determine appropriate attorneys' fees, although the lodestar method may also be used); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *10. In expressly approving the percentage method, the Second Circuit recognized that "the lodestar method proved vexing" and had resulted in "an inevitable waste of judicial resources." *Goldberger*, 209 F.3d at 48,

49;[7] *Savoie*, 166 F.3d at 460 (stating that "percentage-of-the-fund method has been deemed a solution to certain problems that may arise when the lodestar method is used in common fund cases"); *see also* Report of the Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 254-59 (Oct. 8, 1985) (recognizing the many shortfalls of the lodestar method and unequivocally recommending that courts use the percentage method in common fund cases).[8]

The trend among district courts in this Circuit, although not uniform, is to award fees using the percentage-of-the-fund method, rather than the lodestar approach.   *See, e.g., Aponte v. Comprehensive Health Mgmt., Inc.*, No. 10 Civ. 4825 (JLC), 2013 U.S. Dist. LEXIS 47637, at *16 (S.D.N.Y. Apr. 2, 2013) ("The Court finds that the amount of fees requested is fair and reasonable using the 'percentage-of-recovery' method, which is consistent with the 'trend in this Circuit.'") (citation omitted); *In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 108516, at

---

[7]     The use of the percentage-of-the-fund method in common fund cases has been approved by other Courts of Appeal that have addressed the issue.  *See In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821-22 (3d Cir. 1995); *Rawlings v. Prudential-Bache Props.*, 9 F.3d 513, 515-16 (6th Cir. 1993); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 975 (7th Cir. 1991); *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454-56 (10th Cir. 1988); *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 773-74 (11th Cir. 1991); *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269-71 (D.C. Cir. 1993).  Indeed, the Eleventh and District of Columbia Circuits require the use of the percentage method in common fund cases.  *See Camden*, 946 F.2d at 774; *Swedish Hosp.*, 1 F.3d at 1271.

[8]     The determination of attorneys' fees using the percentage-of-the-fund method is also supported by the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. §77z-1(a)(6) (emphasis added).  Courts have concluded that, by drafting the PSLRA in such a manner, Congress expressed a preference for the percentage, as opposed to the lodestar, method of determining attorneys' fees in securities class actions.  *See Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *Maley*, 186 F. Supp. 2d at 370; *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004).

*17 (S.D.N.Y. Aug. 1, 2012) ("'the percentage method continues to be the trend of district courts in th[e Second] Circuit'") (citation omitted); *Stefaniak v. HSBC Bank USA, N.A.*, No. 1:05-CV-720 S, 2008 U.S. Dist. LEXIS 53872, at *9 (W.D.N.Y. July 8, 2008); *Veeco*, 2007 U.S. Dist. LEXIS 85554, at *11; *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964, at *39-*40 (E.D.N.Y. Sept. 18, 2007); *Hicks v. Morgan Stanley & Co.*, No. 01 Civ. 10071 (RJH), 2005 U.S. Dist. LEXIS 24890, at *22 (S.D.N.Y. Oct. 24, 2005) ("The trend in the Second Circuit recently has been to use the percentage method."); *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 520 (E.D.N.Y. 2003) (trend in this Circuit is to award attorneys' fees using the percentage method), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *Maley*, 186 F. Supp. 2d at 370 (trend in this Circuit is to use the percentage method); *see also In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) (stating that "[c]ourts increasingly have come to recognize the shortcomings of the lodestar/multiplier method as a universal rule for compensation"); *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (holding that "the lodestar formula is undesirable if an alternative is available").

Given the language of the PSLRA, the Supreme Court's indication that the percentage method is proper in this type of case, the Second Circuit's explicit approval of the percentage method in *Goldberger*, and the trend among the district courts in this Circuit, the Court should award Co-Lead Counsel attorneys' fees based on a percentage of the fund. The percentage approach not only directly aligns the interests of counsel and the class (*Elliot v. Leatherstocking Corp.*, No. 3:10-CV-0934 (MAD/DEP), 2012 U.S. Dist. LEXIS 171443, at *14 (N.D.N.Y. Dec. 4, 2012)), it also recognizes that the quality of counsel's services is measured best by the results achieved, and "can serve as a proxy for the market in setting counsel fees." *Am. Bank Note*, 127 F. Supp. 2d at 432.

### C.     The Relevant Factors Confirm that the Requested Fee Is Reasonable

In *Goldberger*, the Second Circuit explained that whether the court uses the percentage-of-the-fund method or the lodestar approach, it should continue to consider the traditional criteria that reflect a reasonable fee in common fund cases, including:

- the time and labor expended by counsel;

- the risks of the litigation;

- the magnitude and complexity of the litigation;

- the requested fee in relation to the settlement;

- the quality of representation; and

- public policy considerations.

*Goldberger*, 209 F.3d at 50.  An analysis of these factors demonstrates that the requested fee is fair and reasonable.

### 1.     The Time and Labor Expended by Counsel

Plaintiffs' Counsel have expended substantial time and effort pursuing the Litigation on behalf of the Class.  Since the Litigation commenced more than three years ago, Plaintiffs' Counsel and their para-professionals devoted 2,267.05 hours to prosecuting the Class' claims.  As discussed more fully above and in the Joint Declaration, submitted herewith, Plaintiffs' Counsel: (i) reviewed and analyzed Camelot's filings with the SEC, press releases, public statements and other publications disseminated by or concerning Camelot and the other Defendants, and securities analysts' reports concerning Camelot; (ii) reviewed and analyzed Camelot's press conferences, analyst conference calls and conferences and corresponding transcripts thereof; (iii) reviewed and analyzed the corporate websites of Camelot and the Underwriter Defendants; (iv) translated into English, and reviewed and analyzed media concerning Camelot available only in the Chinese language; (v) interviewed former employees of Camelot and certain of its subsidiaries; (vi) reviewed

- 8 -

analyses prepared by a damages consultant; and (vii) researched the applicable law with respect to Plaintiffs' claims and Defendants' defenses.   Joint Decl., ¶¶16, 35.   Based upon their detailed investigation and analysis of the facts and the law, Plaintiffs filed the Amended Complaint, opposed Defendants' Motions to Dismiss, and prepared for and participated in a formal mediation session with an experienced mediator.   Moreover, Co-Lead Counsel, with the assistance of their damages consultant, calculated the estimated damages suffered by the Class and prepared the proposed Plan of Allocation.   Plaintiffs' Counsel's work in the Litigation will not end with the Court's approval of the proposed Settlement.   Additional hours and resources necessarily will be expended assisting Members of the Class with the completion and submission of their Proof of Claim forms, shepherding the claims process, responding to Class Member inquiries, and preparing for the final approval hearing.  *See Aponte*, 2013 U.S. Dist. LEXIS 47637, at *18.   The time and effort devoted to this case by Plaintiffs' Counsel to obtain a $2.75 million settlement confirm that the 30% fee request is reasonable.

## 2. The Risks of the Litigation

### a. The Contingent Nature of Plaintiffs' Counsel's Representation Supports the Requested Fee

The Second Circuit has recognized that the risk associated with a case undertaken on a contingent fee is an important factor in determining an appropriate fee award:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) (citation omitted).   "Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation."  *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, No. 01-CV-11814 (MP), 2004 U.S. Dist.

- 9 -

LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004); *Am. Bank Note*, 127 F. Supp. 2d at 433 (concluding it is "appropriate to take this [contingent fee] risk into account in determining the appropriate fee to award"); *In re Prudential Sec. Ltd. P'ships Litig.*, 985 F. Supp. 410, 417 (S.D.N.Y. 1997) ("Numerous courts have recognized that the attorney's contingent fee risk is an important factor in determining the fee award."). This risk encompasses not just the risk of no payment, but also the risk of underpayment. *See In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 569-70 (7th Cir. 1992) (reversing district court's fee award where court failed to account for, among other things, risk of underpayment to counsel).

The reasonableness of the requested fee is also supported by an evaluation of the risks undertaken by Plaintiffs' Counsel in prosecuting this class action. Plaintiffs' Counsel undertook this Litigation on a wholly contingent-fee basis, investing a substantial amount of time and money to prosecute this Litigation without a guarantee of compensation or even the recovery of expenses. Unlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Plaintiffs' Counsel have not been compensated for any time or expenses since this case began, and would have received no compensation or even payment of their expenses had this case not been successful.

From the outset, Plaintiffs' Counsel understood that they were embarking on a complex, expensive, and lengthy litigation with no guarantee of ever being compensated for investing the time and money the case would require. In undertaking that responsibility, Plaintiffs' Counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to prosecuting the Litigation and that funds were available to compensate staff and to pay for the considerable costs which a case such as this entails. Under these circumstances, the financial burden on contingent-fee counsel is far greater than on a firm that is paid on an ongoing basis.

- 10 -

1017618_2

In addition to advancing litigation expenses over the past three years, Plaintiffs' Counsel faced the possibility that they would receive no attorneys' fees. It is wrong to presume that a law firm handling complex contingent litigation always wins. There are numerous instances where in contingent cases such as this one, plaintiff's counsel has expended thousands of hours without receiving any compensation.[9]

Losses in contingent fee litigations, especially those brought under the PSLRA, are exceedingly expensive. As a result, the fees that are awarded in successful litigations are used to cover expenses incurred during the course of the litigation and are taxed by federal, state, and local authorities.

### b.    Litigation Risks

While Plaintiffs remain confident in their ability to prove their claims and to rebut Defendants' defenses, they recognize that their ability to prove liability was far from certain. As set forth in the Joint Declaration and in the Settlement Memorandum, Defendants raised numerous defenses in their Motions to Dismiss, and were sure to do the same at the summary judgment stage. For instance, Defendants raised considerable challenges to the falsity, materiality, scienter, and causation elements of Plaintiffs' claims under the federal securities laws. Defendants further contended that they had no duty to disclose any of the allegedly omitted facts. Indeed, Defendants

---

[9]      The risk of no recovery in complex cases of this type is real, and is heightened when lead counsel press to achieve the very best result for those they represent. There are numerous class actions in which lead counsel expended thousands of hours and yet received no remuneration despite their diligence and expertise. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (affirming judgment as a matter of law following jury verdict partially in plaintiffs' favor); *In re JDS Uniphase Corp. Sec. Litig.*, No. C-02-1486 CW (EDL), 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury verdict for defendants); *Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on basis of 1994 Supreme Court opinion).

- 11 -

would never concede their liability and would continue to press these defenses at summary judgment and trial.

### c.    Risk as to Damages

Whether Plaintiffs could prove damages also was unsettled.  Defendants strenuously disagreed with Plaintiffs' damage estimates.  In order for the Class to recover damages at the level estimated by Co-Lead Counsel's damages consultant, they would need to prevail on each and every one of the claims alleged.  The damage assessments of the parties' respective trial experts would be sure to vary substantially, and trial would become a "battle of experts."  The outcome of such battles is never predictable, and there existed the very real possibility that a jury could be swayed by experts for the Defendants to minimize the Class' losses or to show that the losses were attributable to factors other than the alleged misstatements and omissions.  Thus, even if Plaintiffs prevailed as to liability at trial, the judgment obtained could well have been only a fraction of the damages claimed.

### d.    Risk to Enforcing a Judgment

In addition to the above risks, it is uncertain whether the Class would be able to collect any judgment from Camelot after a verdict in Plaintiffs' favor.  At the time the Settlement was reached, Camelot ADSs were trading at $1.80 per share, and the Company had a market capitalization of $83 million, limiting Camelot's ability to withstand a greater judgment.  Joint Decl., ¶38.  Thus, by the time a jury verdict had been reached, it is possible that Camelot would no longer have sufficient assets to satisfy any judgment and/or it might no longer be in business.  Even more importantly, there was a substantial risk that a foreign court would not enforce a judgment against the Company issued by a United States court, resulting in a hollow victory if one was achieved.  *Id.*, ¶40.

- 12 -

### 3.     The Magnitude and Complexity of the Litigation

The complexity of the litigation is another factor examined by courts evaluating the reasonableness of attorneys' fees requested by class counsel.  *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 216 (S.D.N.Y. 1992).  It is widely recognized that shareholder actions are notoriously complex and difficult to prove.  *See In re Bayer AG Sec. Litig.*, No. 03 Civ. 1546 (WHP), 2008 U.S. Dist. LEXIS 101350, at *11 (S.D.N.Y. Dec. 15, 2008); *see also Mathes v. Roberts*, 85 F.R.D. 710, 713-14 (S.D.N.Y. 1980); *Zerkle v. Cleveland-Cliffs Iron Co.*, 52 F.R.D. 151, 159 (S.D.N.Y. 1971).  "[S]ecurities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA."  *In re Ikon Office Solutions, Inc., Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, No. MDL 1500, 2006 U.S. Dist. LEXIS 17588, at *33 (S.D.N.Y. Apr. 6, 2006) ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.  These challenges are exacerbated . . . where a number of controlling decisions have recently shed new light on the standard for loss causation.").  As described in greater detail in the accompanying Settlement Memorandum and the Joint Declaration, this Litigation involved difficult and complex issues.  Plaintiffs' Counsel undertook their investigation on a contingent basis.  Completing fact and expert discovery would have taken a very large investment of additional time, and would have cost several hundred thousand dollars more, at a minimum.  Discovery would have been complicated by the fact that documents, if they could be obtained, would have to be translated into English, and depositions, if they could be taken, would need translators, at great expense to the Class.

The trial of liability issues alone would have involved substantial attorney and expert time, the introduction of voluminous documentary and deposition evidence, vigorously contested motions,

- 13 -

and the considerable expenditures of judicial resources.  In addition, this Litigation was expected to be vigorously contested, and Defendants were represented by very experienced and qualified attorneys.  *See In re Brown Co. Sec. Litig.*, 355 F. Supp. 574, 592-93 (S.D.N.Y. 1973) (standing of opposing counsel underscores complexity of litigation and challenges faced by class counsel).  Accordingly, these factors support the conclusion that the requested fee is reasonable and fair.

### 4.  The Quality of Representation

The quality of the representation by Plaintiffs' Counsel and the standing of that counsel at the bar are important factors that support the reasonableness of the requested fee.  *See In re Flag Telecom Holdings*, No. 02-CV-3400 (CM)(PED), 2010 U.S. Dist. LEXIS 119702, at *82 (S.D.N.Y. Nov. 8, 2010).  It took a great deal of skill to achieve a settlement at this level in this particular case.  Co-Lead Counsel are nationally known leaders in the fields of securities class actions and complex litigation.  This favorable Settlement is attributable to the diligence, determination, hard work, and reputation of Co-Lead Counsel, who developed, litigated, and successfully negotiated the Settlement of this Litigation, an immediate cash recovery in a very difficult case, without the risk of further litigation.

### 5.  Public Policy Considerations

The federal securities laws are remedial in nature, and, to effectuate their purpose of protecting investors, the courts must encourage private lawsuits.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988).  The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman*, 472 U.S. at 310 (citation omitted); *Tellabs*, 551 U.S. at 319 (noting that the court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil

enforcement actions).   Plaintiffs' counsel in these types of cases typically are retained on a contingent basis, largely due to the huge commitment of time and expense required.   The typical class representative is unlikely to be able to pursue long and protracted litigation at his or her own expense, particularly with the knowledge that others similarly situated will be able to "free ride" on these efforts at no cost or risk to themselves.   Furthermore, the significant expense combined with the high degree of uncertainty of ultimate success means that contingent fees are virtually the only means of recovery in such cases.   Indeed, lawyers that pursue private suits such as this on behalf of investors augment the overburdened SEC by "acting as 'private attorneys general.'"   *Ressler v. Jacobson*, 149 F.R.D. 651, 657 (M.D. Fla. 1992) (citation omitted).   Thus, "public policy favors the granting of [attorney] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions."   *Id.*[10]

Because actionable securities fraud exists and society benefits from strong advocacy on behalf of securities holders, public policy favors the granting of the fee and expense application.   *See In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 359 (S.D.N.Y. 2005) ("In order to attract well-qualified plaintiffs' counsel who are able to take a case to trial, and who defendants understand are able and willing to do so, it is necessary to provide appropriate financial incentives.").

---

[10]   *See also Maley*, 186 F. Supp. 2d at 373 ("In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered."); *In re Med. X-Ray Film Antitrust Litig.*, No. CV-93-5904, 1998 U.S. Dist. LEXIS 14888, at *23 (E.D.N.Y. Aug. 7, 1998) (awarding fee of 33-1/3% because it "furthers the public policy of encouraging private lawsuits"); *Chatelain*, 805 F. Supp. at 216 (determining that "an adequate award furthers the public policy of encouraging private lawsuits in pursuance of the remedial federal securities laws"); *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 750-51 (S.D.N.Y. 1985) (observing that "[f]air awards in cases such as this encourage and support other prosecutions, and thereby forward the cause of securities law enforcement and compliance"), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

- 15 -

### 6. The Requested Attorneys' Fees Are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method

Regardless of which method a court uses to award attorneys' fees, the award must be reasonable under the circumstances of the particular case. *Goldberger*, 209 F.3d at 47. In selecting an appropriate fee award, the Supreme Court recognizes that a fee is intended to approximate what counsel would receive if they were bargaining for the services in the marketplace. *Missouri v. Jenkins*, 491 U.S. 274, 285 (1989). If this were a non-representative action, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *Blum v. Stenson*, 465 U.S. 886, 903 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery.") (Brennan, J., concurring).

On a percentage basis, the compensation requested here is well within the range of percentage fee awards within the Second Circuit. *See Silverberg v. People's Bank*, 23 F. App'x 46, 47-49 (2d Cir. 2001) (affirming district court order awarding attorneys' fees and expenses of nearly one-third of settlement fund). Indeed, the requested fee is consistent with what courts in this Circuit commonly award in common fund cases. *See In re Amaranth Natural Gas Commodities Litig.*, No. 07 Civ. 6377(SAS), 2012 U.S. Dist. LEXIS 82599, at *9-*10 (S.D.N.Y. June 11, 2012) (awarding 30% of $77.1 million fund); *Westerfield v. Wash. Mut. Bank*, No. 06-CV-2817(JMA), 2009 U.S. Dist. LEXIS 94544, at *13 (E.D.N.Y. Oct. 8, 2009) (awarding 30% of $38 million fund); *In re L.G. Philips LCD Co., Ltd. Sec. Litig.*, No. 1:07-cv-00909-RJS, slip op. at 1 (S.D.N.Y. Mar. 17, 2011) (Sullivan, J.) (awarding 30%); *Menkes v. Stolt-Nielsen S.A.*, No. 3:03CV00409 (DJS), 2011 U.S. Dist. LEXIS 7066, at *18-*19 (D. Conn. Jan. 25, 2011) (awarding 33-1/3%); *In re JAKKS Pac., Inc. S'holders Class Action Litig.*, No. 04-CV-8807 (RJS), slip op. at 5 (S.D.N.Y. Oct. 28, 2010) (Sullivan, J.) (awarding 30%); *Schnall v. Annuity & Life Re (Holdings), Ltd.*, No. 02 CV 2133

- 16 -

(EBB), slip op. at 8-9 (D. Conn. Jan. 21, 2005) (Burns, J.) (awarding 33-1/3%); *In re LaBranche Sec. Litig.*, No. 03-CV-8201(RWS), slip op. at 1 (S.D.N.Y. Jan. 22, 2009) (Sweet, J.) (awarding 30%); *Taft v. Ackermans*, No. 02 Civ. 7951 (PKL), 2007 U.S. Dist. LEXIS 9144, at *4-*5 (S.D.N.Y. Jan. 31, 2007) (awarding 30%); *Clark v. Ecolab Inc.*, No. 07 Civ. 8623 (PAC), 2010 U.S. Dist. LEXIS 47036, at *27 (S.D.N.Y. May 11, 2010) (awarding fees of one-third of settlement); *Collins v. Olin Corp.*, No. 3:03-cv-945(CFD), 2010 U.S. Dist. LEXIS 39862, at *25 (D. Conn. Apr. 21, 2010) (awarding one-third of settlement fund as attorneys' fees); *McMahon v. Olivier Cheng Catering & Events, LLC*, No. 08 Civ. 8713 (PGG), 2010 U.S. Dist. LEXIS 18913, at *18 (S.D.N.Y. Mar. 3, 2010) (awarding fees of one-third of settlement fund); *Khait v. Whirlpool Corp.*, No. 06-6381 (ALC), 2010 U.S. Dist. LEXIS 4067, at *27 (E.D.N.Y. Jan. 20, 2010) (awarding fees of one-third of settlement fund); *Reyes v. Buddha-Bar NYC*, No. 08 Civ. 02494 (DF), 2009 U.S. Dist. LEXIS 45277, at *28 (S.D.N.Y. May 28, 2009) (awarding fees of one-third of settlement fund); *Stefaniak*, 2008 U.S. Dist. LEXIS 53872, at *10 (awarding 33% of the fund, finding it "typical in class action settlements in the Second Circuit"); *In re Van Der Moolen Holding N.V. Sec. Litig.*, No. 1:03-CV-8284 (RWS), slip op. at 2 (S.D.N.Y. Dec. 6, 2006) (Sweet, J.) (awarding 33-1/3% of fund); *Spann v. AOL Time Warner, Inc.*, No. 02 Civ. 8238 (DLC), 2005 U.S. Dist. LEXIS 10848, at *27 (S.D.N.Y. June 7, 2005) (awarding 33-1/3% of settlement fund); *Maley*, 186 F. Supp. 2d at 374 (awarding 33-1/3% of settlement fund).[11]

> **7.    The Requested Attorneys' Fees Are Also Reasonable Under the Lodestar Cross-Check**

To ensure the reasonableness of a fee awarded under the percentage-of-the-fund method, a district court may cross check the proposed award against counsel's lodestar. *See Goldberger*, 209

---

[11]    All unreported authorities are attached to the Joint Declaration.

F.3d at 50. "Under the lodestar method, the court must engage in a two-step analysis: first, to determine the lodestar, the court multiplies the number of hours each attorney spent on the case by each attorney's reasonable hourly rate; and second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained, and the quality of the attorney's work." *City of Providence v. Aéropostale, Inc.*, No. 11 Civ. 7132 (CM) (GWG), 2014 U.S. Dist. LEXIS 64517, at *36-*37 (S.D.N.Y. May 9, 2014). "Calculation of the lodestar, however, is simply the beginning of the analysis." *Warner Commc'ns*, 618 F. Supp. at 747; *In re Ivan F. Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995). Performing the lodestar cross-check here confirms that the fee requested by Co-Lead Counsel is reasonable and should be approved.

Plaintiffs' Counsel and their para-professionals have spent, in the aggregate, 2,267.05 hours in the prosecution of this case. *See* Declaration of Johnston de F. Whitman, Jr. in Support of Application for an Award of Attorneys' Fees and Expenses Filed on Behalf of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz Decl."), the Declaration of David A. Rosenfeld Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Robbins Geller Decl."), the Declaration of Jeffrey M. Haber in Support of Bernstein Liebhard LLP's Application for an Award of Attorneys' Fees and Expenses ("Bernstein Liebhard Decl."), the Declaration of Corey D. Holzer Filed on Behalf of Holzer & Holzer, LLC in Support of Application for Award of Attorneys' Fees and Expenses ("Holzer Decl."), and the Declaration of Jeffrey A. Berens Filed on Behalf of Dyer & Berens LLP in Support of Application for Award of Attorneys' Fees and Expenses ("Dyer Berens Decl."), attached to the Joint Declaration

as Exhibits 4-8, respectively.  The resulting lodestar is $1,211,246.50.[12]  The amount of attorneys'

fees requested by Co-Lead Counsel herein, 30% of the Settlement Fund, or $825,000, plus interest,

represents a negative multiplier of 0.68 to counsel's aggregate lodestar.[13]  In other words, Plaintiffs'

Counsel are applying for a fee that is *less than* what they "'would charge a client who in advance

had agreed to pay for his services, regardless of success.'"  *Grinnell*, 495 F.2d at 470 (citation

omitted).

The lodestar/multiplier is to be used merely as a cross-check on reasonableness.  To find

otherwise undermines the principles supporting the percentage approach and encourages needless

lodestar building litigation.  *See also Ikon*, 194 F.R.D. at 196 ("The court will not reduce the

requested award simply for the sake of doing so when every other factor ordinarily considered

weighs in favor of approving class counsel's request of thirty percent.").  Plaintiffs' Counsel

invested substantial time and effort prosecuting this Litigation against the Defendants to a successful

completion.  The requested fee, therefore, is manifestly reasonable, whether calculated as a

percentage of the fund or in relation to Plaintiffs' Counsel's lodestar.

### 8. The Class' Reaction to the Fee Request

To date, the Claims Administrator has sent copies of the Notice to over 25,500 potential

Members of the Class and nominees informing them, *inter alia*, that Co-Lead Counsel intended to

apply to the Court for an award of attorneys' fees in an amount not to exceed 30% of the Settlement

---

[12]    In determining whether the rates are reasonable, the Court should take into account the attorneys' professional reputation, experience, and status.  As Co-Lead Counsel's declarations demonstrate, Co-Lead Counsel are among the most prominent, experienced, and well-regarded securities practitioners in the nation.  Therefore, their hourly rates are reasonable here. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 U.S. Dist. LEXIS 9450, at *73 (S.D.N.Y. Feb. 1, 2007) (approving counsel's hourly rates)

[13]    The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Jenkins*, 491 U.S. at 283-84.

Fund, plus expenses not to exceed $140,000, plus interest on both amounts.  The time to object to the

fee request expires on April 21, 2015.  To date, only a few weeks before the objection deadline, not a

single objection to the fee and expense amounts set forth in the Notice has been received.  Such a

"low level of objections is a 'rare phenomenon.'"  *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305

(3d Cir. 2005) (citation omitted).  Moreover, "a significant number of investors in the class were

'sophisticated' institutional investors that had considerable financial incentive to object [to the

settlement] had they believed [the settlement was unfair or] the requested fees were excessive."  *Id.*

The fact that no objections were received is compelling evidence of the fairness of the fee request.

## V.   PLAINTIFFS' COUNSEL'S EXPENSES WERE REASONABLY INCURRED AND NECESSARY TO THE PROSECUTION OF THIS LITIGATION

Co-Lead Counsel also respectfully request an award of $99,238.79 in expenses incurred by

Plaintiffs' Counsel while prosecuting the Litigation.  Plaintiffs' Counsel have submitted separate

declarations regarding these expenses, which are properly recovered by counsel.  *See* Kessler Topaz

Decl., Robbins Geller Decl., Bernstein Liebhard Decl., Holzer Decl., and Dyer Berens Decl.,

attached as Exs. 4-8 to the Joint Declaration.  *See In re Indep. Energy Holdings PLC Sec. Litig.*, 302

F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (court may compensate class counsel for reasonable

expenses necessary to the representation of the class).  Plaintiffs' Counsel's expenses include the

costs of hiring an investigator based in Hong Kong, a damages consultant, mediating the Class'

claims, serving certain Defendants under the Hague Service Convention, and computerized research.

These expenses were critical to Plaintiffs' success in achieving the proposed Settlement.  *See Global

Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert

witnesses, filing fees, service of process, travel, legal research and document production and

review – are the type for which 'the paying, arms' length market' reimburses attorneys . . . [f]or this

1017618_2

reason, they are properly chargeable to the Settlement fund.").  Not a single objection to the expense amount set forth in the Notice has been received.  Accordingly, Co-Lead Counsel respectfully request payment for these expenses, plus interest earned on such amount at the same rate as that earned by the Settlement Fund.

## VI.     CONCLUSION

Based on the foregoing and the entire record herein, Co-Lead Counsel respectfully request that the Court award attorneys' fees of 30% of the Settlement Fund plus expenses in the amount of $99,238.79, plus interest on both amounts.

DATED:  April 2, 2015                              Respectfully submitted,

                                                              ROBBINS GELLER RUDMAN
                                                                & DOWD LLP
                                                              SAMUEL H. RUDMAN
                                                              DAVID A. ROSENFELD


                                                              _____s/ David A. Rosenfeld_____
                                                              DAVID A. ROSENFELD

                                                              58 South Service Road, Suite 200
                                                              Melville, NY  11747
                                                              Telephone:  631/367-7100
                                                              631/367-1173 (fax)

                                                              KESSLER TOPAZ MELTZER
                                                                & CHECK, LLP
                                                              JOHNSTON de F. WHITMAN, JR.
                                                              280 King of Prussia Road
                                                              Radnor, PA  19087
                                                              Telephone:  610/667-7706
                                                              610/667-7056 (fax)

                                                              Co-Lead Counsel for Plaintiffs

                                                              BERNSTEIN LIEBHARD LLP
                                                              JEFFREY M. HABER
                                                              10 East 40th Street
                                                              New York, NY  10016
                                                              Telephone:  212/779-1414
                                                              212/779-3218 (fax)

- 21 -

HOLZER & HOLZER, LLC
COREY D. HOLZER
MARSHALL P. DEES
1200 Ashwood Parkway, Suite 410
Atlanta, GA  30338
Telephone:  770/392-0090
770/392-0029 (fax)

DYER & BERENS
JEFFREY A. BERENS
303 East 17th Avenue, Suite 810
Denver, CO  80203
Telephone:  303/861-1764
303/395-0393 (fax)

Additional Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2015, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I caused to be mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 2, 2015.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
  & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  DRosenfeld@rgrdlaw.com

## Mailing Information for a Case 1:12-cv-00086-PGG

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Alfred Louis Fatale , III**
  alfred.fatale@friedfrank.com

- **Stephanie J. Goldstein**
  GoldsSt@ffhsj.com,nydocketclrk@ffhsj.com

- **Cody R. Lejeune**
  clejeune@rgrdlaw.com

- **Sean Logan McGrane**
  sean.mcgrane@squirepb.com,cle_dckt@squirepb.com,antoinette.geannesses@squirepb.com

- **William G. McGuinness**
  william.mcguinness@friedfrank.com,nydocketclrk@ffhsj.com

- **Scott D. Musoff**
  smusoff@skadden.com,aviva.nusbaum@skadden.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Samuel Howard Rudman**
  srudman@rgrdlaw.com,e_file_ny@rgrdlaw.com,mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

- **Joseph R. Seidman**
  seidman@bernlieb.com,nalvarez@bernlieb.com,ecf@bernlieb.com

- **Johnston de Forest Whitman , Jr**
  jwhitman@ktmc.com,dmaytorena@ktmc.com,jenck@ktmc.com,cchiappinelli@ktmc.com,ahankins@ktmc.com,mswift@ktmc.com,acashwell@

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)